MATTHEW A. KEMPES, a Minor, by his Mother and Next Friend, Jacqueline Kempes, Plaintiff-Appellant, v. DUNLOP TIRE AND RUBBER CORPORATION, Defendant-Appellee.

First District (3rd Division)   No. 1—89—0633

Opinion filed December 13, 1989.

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Curt N. Rodin and Marc A. Taxman, of counsel), for appellant.

Kiesler & Berman, of Chicago (Stephen B. Frew, R. Howard Jump, and Jean M. French, of counsel), for appellee.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Matthew Kempes, by his mother and next friend, Jacqueline Kempes, sued defendant, Dunlop Tire and Rubber Corporation, in strict liability in tort for injuries sustained when plaintiff cut into the center of a golf ball allegedly designed, prepared, manufactured, advertised, distributed, supplied, and/or sold by defendant. In lieu of answering the complaint, defendant filed a motion for summary judgment. The trial court granted the motion. Plaintiff appeals.

The injuries for which plaintiff sought recovery occurred on May 30, 1979, when plaintiff was eight years old. About a week before that date, one of plaintiff's older brothers brought home a grocery bag, one-quarter full, of golf balls. Sometime prior to his accident, plaintiff observed another brother cut open one of the golf balls. Plaintiff's brother removed the ball's cover and the rubber bands underneath it to find a little rubber ball at the center. On May 30, plaintiff came across one of the golf balls, in his backyard, on which he had previously seen the name "Dunlop" printed. About one quarter of the cover of the ball had been chewed off by the family dog, and the remainder of the ball had teeth marks over it. Plaintiff removed the ball's cover and then began removing the rubber bands surrounding the ball's inner center. Plaintiff grew impatient with this process and

obtained some scissors to cut the rubber bands. As plaintiff was doing so, he also cut into the little ball underneath the rubber bands and the contents of the ball squirted into his right eye. Plaintiff eventually underwent two operations to correct his eye injuries.

In discovery, plaintiff deposed Martin R. Potzler, the technical manager for Dunlop Sports Company since 1969. Dunlop Sports Company is a division of defendant. Potzler testified to the following. As technical manager, he was responsible for product design, process improvements and quality control of sports products. Defendant did not manufacture any golf balls designated as "Dunlop 65" in the United States containing a paste center. Such balls were manufactured in Ireland and the United Kingdom by defendant's English division. After examining the golf ball plaintiff cut into, Potzler concluded that the rubber ball at its center contained a paste. There were at least four different golf balls which defendant manufactured in the United States with paste centers, none of which were designated "Dunlop 65." Defendant no longer manufactured paste center golf balls. Defendant switched to a water center to save money. Potzler was directed to develop a golf ball with a water center in approximately 1966. The paste center of the golf balls defendant made in the United States contained bentonite clay, water, barium sulfate, zinc, glycerin and methyl salicylate. Potzler knew before plaintiff's accident that children sometimes took defendant's golf balls apart. He knew that before he went to work for defendant. Potzler himself took apart a golf ball as a child. If all of the rubber bands under the cover of a paste center golf ball were removed and the hard rubber center was cut with a knife or scissors, the paste would not come out as if under pressure but would simply leak out. However, if the rubber bands were still around the hard rubber ball when the ball was cut, the paste at the center would come out under pressure.

Potzler further testified that he first learned that eye injuries could result from the cutting of golf balls with paste centers when he heard of a New Jersey child injured in that manner in 1970 or 1971. Potzler had also learned of a 1975 Massachusetts case and one in New York City in the late 1970's. Based on his determination that its cover was not manufactured in the United States, Potzler concluded that the golf ball plaintiff cut into was not manufactured by defendant in the United States. However, the writing on the ball was similar to that on the "Dunlop 65" manufactured in the United States. Moreover, the thread in the cover of the ball was very similar to latex thread manufactured by defendant. However, such thread was not used on paste center balls made in the United States by defendant.

Potzler did not know when the golf ball plaintiff cut into was manufactured. Defendant ceased the manufacture of paste center golf balls in 1967 and did not manufacture a "Dunlop 65" golf ball until 1968. The "Dunlop 65" manufactured in 1968 and thereafter did not contain a paste center. Defendant's English division began using the name "Dunlop 65" in the 1930s. Because the first "Dunlop 65" balls made in the United States were imprinted with printing dies sent from England, it could not be determined where the ball plaintiff cut into was manufactured. Potzler could not testify that defendant did not sell the ball which injured plaintiff.

Defendant moved for summary judgment on the grounds that plaintiff could not prove that defendant made the golf ball he cut into, the golf ball was not in the same condition at the time of the accident as it was when it left defendant's control, plaintiff had no expert witness, the accident was not reasonably foreseeable, and it would have been impossible to warn plaintiff. The trial court granted the motion on the ground that plaintiff's conduct constituted an unforeseeable alteration of the golf ball. In doing so, the trial court reasoned, *inter alia*, that "[i]t would be unreasonable to impose a duty upon a defendant whose product is especially unsusceptible to dismantling to warn of the dangers that such a misuse [of the product] poses."

OPINION

In appealing the summary judgment for defendant, plaintiff contends that the record establishes that defendant knew that children cut into its paste center golf balls and the risk of injury posed by such balls. Plaintiff cites Potzler's deposition testimony and the deposition testimony of James Fox, defendant's vice-president, secretary and general counsel, as revealing defendant's knowledge of those facts. Plaintiff concludes from this evidence that, at the very least, a genuine issue of material fact existed with regard to the foreseeability of his injuries by defendant.

■■ ■ Preliminarily, we must note a variance between plaintiff's complaint, on the one hand, and the questions plaintiff's counsel put to Potzler and Fox and their answers thereto during their discovery depositions, on the other hand. The former predicated defendant's liability on, *e.g.*, the manufacture, distribution and/or sale of a "Dunlop 73" golf ball. The latter, however, concerned only defendant's manufacture, distribution or sale of undesignated golf balls or golf balls designated as "Dunlop 65." There is no reference in the record whatsoever to a "Dunlop 73" golf ball other than in plaintiff's complaint. This variance results in the failure of the record to raise a genuine issue of

material fact regarding defendant's liability for injuries caused by a "Dunlop 73" golf ball. Conclusory allegations in a complaint do not raise a question of fact when unsupported by facts admissible in evidence and when affidavits and depositions in support of a motion for summary judgment contain evidentiary facts to the contrary. (See *Lesnik v. Estate of Lesnik* (1980), 82 Ill. App. 3d 1102, 1106, 403 N.E.2d 683.) On this basis, we find that summary judgment was properly entered for defendant. However, we find that summary judgment was properly entered for defendant even disregarding this variance.

■■ Summary judgment is proper only where the record reveals that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) While a plaintiff is not required to prove his case in responding to a motion for summary judgment, he is required to present facts to support the elements of his claim. (*Technical Representatives, Inc. v. Richardson-Merrell, Inc.* (1982), 107 Ill. App. 3d 830, 438 N E.2d 599.) There are several elements to a cause of action in strict liability for an unreasonably dangerous product. However, the dispositive one in this case is the element of reasonable forseeability of harm therefrom by the manufacturer or seller.

■■ ■ A manufacturer's strict liability in tort for an unreasonably dangerous product "encompasses only those individuals to whom injury from a defective product may reasonably be foreseen and only those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable that it may be used." (*Winnett v. Winnett* (1974), 57 Ill. 2d 7, 11, 310 N.E.2d 1.) Moreover, "[f]oreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur." (Emphasis in original.) (*Winnett*, 57 Ill. 2d at 12-13.) The issue of foreseeability is normally for the jury. However, it may be decided as a matter of law where the facts demonstrate that the plaintiff could never be entitled to recover. *DeArmond v. Hoover Ball & Bearing* (1980), 86 Ill. App. 3d 1066, 1071, 408 N.E.2d 771.

*Winnett* turned on the determination that the manufacturer of a forage wagon could not reasonably foresee injury to a four-year-old resulting from the use of its product for its intended purpose. In contrast, this case turns on the reasonable foreseeability by defendant of injury to a child from a use of its product for which it was obviously not intended, *i.e.*, dismantling or dissection. The parties cite many cases in support of their positions on this issue. However, we find the cases of little assistance in deciding the foreseeability issue here. We believe that this case illustrates that the issue of reasonable foresee-

ability is dependent upon the unique facts of a particular case. As such, we find general principles of product liability law more helpful than analogy to the cases cited.

■■■ The principles applicable to this case are the following:

"A manufacturer or seller may be exonerated from liability where a product is altered after leaving its hands. * * *

Where the condition of a product at the time an accident occurs is substantially and materially different from its condition at the time of sale, the plaintiff will be unable to prove its prima facie case.

* * *

Generally, only alterations or modifications that were not reasonably foreseeable by the manufacturer or seller are sufficient to preclude * * * liability. If a product is safe when sold, the manufacturer is not required to anticipate or foresee that a user will so alter the product's condition as to render it dangerous[.] * * *

The plaintiff bears the burden of proving that it was foreseeable that an alteration would be made, and that the alteration itself did not unforeseeably render the product unsafe. The plaintiff must establish that it was objectively foreseeable that a subsequent alteration of the product would create a risk of injury; subsequent alterations are objectively foreseeable where in light of the general experience within the industry at the time the product was manufactured, they could reasonably have been anticipated by the manufacturer." 3 American Law of Products Liability 3d §43.1, at 9-10, 11; §43.16 at 30-32 (Travers 1987).

■ Applying these principles here, we conclude that plaintiff's act of removing the cover from defendant's golf ball, unwinding some of the rubber bands underneath the cover and then taking a pair of scissors to cut the remaining rubber bands, resulting in plaintiff's accidentally cutting into the hard rubber center of the ball, was not reasonably foreseeable to defendant.[1]

Unquestionably, defendant's golf ball was safe when sold by defendant for its intended purpose. Plaintiff does not argue and

---

[1]Defendant mainly argues that the golf ball was not in the same condition at the time of plaintiff's injury as when it left its control. This argument shifts the inquiry from the dispositive issue of reasonable foreseeability to, we believe, the irrelevant issue of whether the entire golf ball or its paste center was the product upon which plaintiff predicated his claim. Moreover, the fact argued is implicit in our "alteration" analysis. As such, we find no need to address it.

presents no evidence that use of the golf ball in the game of golf posed a risk that the bentonite clay paste center would be breached. As such, we do not believe that defendant was required to foresee or anticipate that anyone, including a child, would so alter the golf ball's condition as to render the paste center of the ball dangerous. Moreover, plaintiff has not argued nor presented any evidence that, in light of the general experience within the industry at the time the ball was manufactured, such a subsequent alteration as he made could reasonably have been anticipated by defendant. Therefore, he has not shown that his subsequent alteration of the golf ball, which created a risk of injury, was objectively foreseeable by defendant.

Contrary to plaintiff's argument, we do not believe that the deposition testimony of either Potzler or Fox established the reasonable, *i.e.*, objective, foreseeability of plaintiff's accident by defendant.

Preliminarily, we decline to impute to defendant Potzler's knowledge, obtained before going to work for defendant and in part from his own conduct as a child, that children cut into golf balls. We do not believe that the law of agency either supports or requires the imputation of an employee's general knowledge, gained through whatever his life experiences may have been, to his employer in a products liability case, at least, absent any proof that that knowledge, in all probability, would have been shared with the employer.

Potzler did testify that he heard of cases at various times throughout the 1970's of children being injured by cutting into paste center golf balls. However, in relying on this admission, plaintiff ignores Potzler's additional testimony that defendant stopped making such golf balls in 1967. Even assuming, contrary to Potzler's testimony, that defendant manufactured the golf ball that injured plaintiff, the fact that Potzler learned in the 1970's that children could be injured by cutting into paste center golf balls is irrelevant to defendant's foreseeability of the injury to plaintiff. The relevant period of time upon which attention must focus in cases involving strict liability in tort for manufacturing or selling a defective product is the time of manufacture or sale of the product. It is necessarily inherent in the concept of reasonable foreseeability of an injury from a defective product that it is determined as of the time of sale or manufacture of that product. (1 American Law of Products Liability 3d §10.8 (1987).) Thus, the fact that defendant gained knowledge that children were being and could be injured by cutting into paste center golf balls after it stopped making such balls proves nothing insofar as the foreseeability of that risk at the time of manufacture.

In contesting defendant's motion, plaintiff also relied on the

alternative allegations of his complaint that defendant, *inter alia*, distributed, sold or supplied the golf ball which injured him. On appeal, plaintiff asserts that defendant admitted this allegation by failing to deny it in an answer. Assuming, *arguendo*, that this was a well-pleaded allegation of fact, plaintiff is correct. See *Bank of Waukegan v. Epilepsy Foundation of America* (1987), 163 Ill. App. 3d 901, 516 N.E.2d 1337 (by filing summary judgment motion before answer, defendant admits only well-pleaded allegations of fact not contradicted by summary judgment motion or depositions).

However, defendant's admission is of no avail to plaintiff even putting aside that his allegation of injury by a "Dunlop 73" golf ball was not a well-pleaded allegation of fact, being unsupported and directly contradicted by the record. Plaintiff failed to also affirmatively allege that defendant distributed, sold or supplied the golf ball which injured him after being put on notice of the risk of injury to children posed by such balls. Therefore, defendant's admission merely raised a bare possibility of that fact. However, liability in a products liability case cannot be based on speculation, guess or conjecture, and the circumstances in such a case must justify an inference of probability rather than mere possibility. *Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 33, 468 N.E.2d 422; *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 508, 418 N.E.2d 503; see also *Kramer v. Weedhopper of Utah, Inc.* (1986), 141 Ill. App. 3d 217, 222, 490 N.E.2d 104.

Moreover, there is no evidence elevating to even a minimal probability the bare possibility raised by plaintiff's complaint that defendant distributed, sold or supplied the golf ball that injured him. Potzler testified at his deposition that "Dunlop 65" golf balls with paste centers were manufactured in Ireland and the United Kingdom by defendant's English division. He did not know whether defendant had sold any of those balls in the United States or whether defendant sold the ball that injured plaintiff. Fox testified that defendant was affiliated with an English company, Dunlop Sports Company, Ltd., which was a separate corporation, and that neither company was a subsidiary of the other but that they were jointly owned by a third entity. Fox did not know whether the English entity had sold golf balls in the United States nor did he know any way to determine whether defendant had sold any "Dunlop 65" golf balls manufactured by the English entity in the United States. Finally, Fox stated that there were no distribution or licensing agreements between defendant and the English entity regarding golf balls.

The record in this case thus provides no basis from which a fact

finder could find it more probably true than not that defendant distributed, sold or supplied the golf ball which injured plaintiff after it learned of the risk of injury posed by its paste center golf balls. Also being inadequate to prove defendant's manufacture of the ball with such knowledge, the record amply supported summary judgment for defendant.

Finally, the conclusion that plaintiff could never prove that defendant manufactured, distributed, sold or supplied the golf ball with knowledge of the risk of injury it posed is also dispositive of his claim that the golf ball was unreasonably dangerous because defendant issued no warnings against that risk. A plaintiff predicating a products liability action upon a failure to warn must plead and prove that the manufacturer, seller, or supplier, *etc.*, knew or should have known of the danger that caused his injury. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194.) *Woodill* does not expressly qualify that rule with the limitation that such knowledge exist at the time of manufacture, sale or supply of the product. However, it is implicit in its observation that "[t]o hold a manufacturer liable for failure to warn of a danger of which it would be impossible to know based on the *present* state of human knowledge would make the manufacturer a virtual insurer of the product, a position rejected by this court in [*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182]." (Emphasis added.) *Woodill*, 79 Ill. 2d at 37.

Moreover, *Collins v. Hyster Co.* (1988), 174 Ill. App. 3d 972, 529 N.E.2d 303, has answered the precise question presented here. *Collins* noted that no Illinois authority extended the duty to warn beyond the time when a product left its manufacturer's control "unless [it] knew or should have known at that time that the product was defective." (*Collins*, 174 Ill. App. 3d at 977.) The fact that *Collins* was a negligence action does not distinguish it from this case inasmuch as the duty to warn as applied in strict products liability cases is a doctrine borrowed from negligence (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 33, 402 N.E.2d 194). *Woodill* and *Collins* require us to hold that defendant owed plaintiff no duty to warn of the danger involved here.

For all of the foregoing reasons, we affirm the summary judgment entered for defendant Dunlop Tire and Rubber Corporation.

Affirmed.

WHITE and CERDA, JJ., concur.