RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0244p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

THE HEIL CO., d/b/a Heil Environmental,
*Plaintiff-Appellee,*

v.

No. 11-6252

EVANSTON INSURANCE COMPANY,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:08-cv-244—Harry S. Mattice, Jr., District Judge.

Argued: July 18, 2012

Decided and Filed: August 3, 2012

Before: SILER and KETHLEDGE, Circuit Judges; MURPHY, District Judge.[*]

_____

## COUNSEL

_____

**ARGUED:** Michael J. King, WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC, Knoxville, Tennessee, for Appellant. M. Todd Lowther, BALCH & BINGHAM LLP, Birmingham, Alabama, for Appellee. **ON BRIEF:** Michael J. King, W. Kyle Carpenter, Latisha J. Stubblefield, WOOLF, McCLANE, BRIGHT, ALLEN & CARPENTER, PLLC, Knoxville, Tennessee, for Appellant. M. Todd Lowther, R. Bruce Barze, Jr., BALCH & BINGHAM LLP, Birmingham, Alabama, for Appellee.

_____

## OPINION

_____

STEPHEN J. MURPHY, III, District Judge. Evanston Insurance Company ("Evanston") appeals the denial of its post-trial motion for judgment as a matter of law,

_____
[*] The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

or in the alternative to alter or amend the judgment. For the following reasons, we **VACATE** the jury's verdict on The Heil Company's claim for bad faith failure to settle and the associated $2 million punitive damages award, and **REMAND** for a new trial on those issues. We **AFFIRM** the jury's finding that Evanston is liable under Tennessee Code Annotated § 56-7-105.

I.

This litigation stems from a wrongful death action brought against The Heil Company ("Heil") in 2003, for which Evanston, as Heil's insurer, assumed Heil's defense.

In 2003, Bob Ronske's widow sued Heil after a dump truck body, manufactured by Heil and mounted onto Mr. Ronske's truck, lowered onto Mr. Ronske causing his death. At the time of the accident, Heil held a commercial general liability policy issued by Evanston that covered the suit. Under the policy, Evanston agreed to insure the first $1 million loss incurred by Heil, in excess of a $500,000 self-insured retention ("SIR"). The policy required Heil to "provide, at [its] own expense, proper defense and investigation of any claim and to accept any reasonable offer of settlement within the [$500,000] Self-Insured Retention." Am. Compl. at ¶ 8, R. 18. The policy also provided that Evanston, if it chose, had the right to assume charge of the defense and settlement of an action.

Heil retained attorney Craig Pelini to defend it in the *Ronske* litgation. Pelini defended the matter for over two years, until April 5, 2005, when Evanston notified Heil that it wanted to assume charge of Heil's defense. Over Heil's objection, Evanston appointed Larry Sutter to replace Pelini as lead counsel. Heil and Evanston agreed, however, that Pelini could remain involved in the defense of the action, that Pelini's fees would count toward exhaustion of the SIR, and that Evanston would pay any of Pelini's fees in excess of the SIR.

The suit went to trial and the jury awarded Ms. Ronske $6 million. After the court of appeals affirmed the verdict, the parties settled the case for $5,711,000.

Evanston paid $1 million of the settlement, as required under Heil's policy. This left Heil responsible for the remaining $4,711,000, including its $500,000 SIR. Heil also incurred $63,533.79 in attorney fees and costs expended in excess of its SIR. Heil unsuccessfully sought payment of the attorney fees and costs from Evanston.

Heil initiated the instant litigation in 2008. It brought claims against Evanston for (1) breach of contract, for Evanston's failure to pay the attorney fees and costs; (2) violation of Tenn. Code Ann. § 56-7-105, providing statutory damages for an insurer's bad faith refusal to pay amounts owed; and (3) bad faith failure to settle the *Ronske* litigation. Heil sought $63,533.79 plus prejudgment interest for breach of contract; the 25% penalty on that amount for the statutory claim; and up to $4.7 million in compensatory damages for Evanston's failure to settle, plus punitive damages.

The jury found that Evanston "did" breach the contract and refuse in bad faith to pay Heil amounts owed under the policy, but "did not" fail to settle the wrongful death action against Heil in bad faith. The jury awarded Heil compensatory damages plus prejudgment interest for the breach of contract, $15,883.44 in statutory damages for Evanston's bad faith refusal to pay, and also awarded punitive damages of $2 million.

## II.

The punitive damages award and the § 56-7-105 claim are the subjects of this appeal. Evanston asks us to review (1) whether the district court erred in affirming the jury's award of punitive damages because there are no legally sufficient grounds, in law or fact, to support it; (2) whether the punitive damages award violated due process; and (3) whether sufficient evidence supported the jury's finding of liability for bad faith refusal to pay.

## A.

Evanston argues that there are no legally sufficient grounds to support the punitive damages award because the jury found Evanston not liable "on the *only claim* submitted to the jury for which punitive damages could be awarded." Appellant's Br. at 15 (emphasis in original). Specifically, Evanston argues that under Tennessee law,

punitive damages may not be awarded absent an award of compensatory damages.  Heil sought punitive damages on its failure-to-settle claim, but the jury found Evanston not liable and did not award Heil any compensatory damages on that claim.  Although the jury *did* award compensatory damages for breach of contract, the punitive damages award cannot be attributed to that claim, Evanston argues, because Tenn. Code Ann. § 56-7-105 provides the exclusive extracontractual remedy for breach of contract based on an insurer's failure to pay amounts owed under the policy.

1.

Before proceeding, we must clarify which Civil Rules govern our analysis.  First, Evanston raised the above arguments to the district court under both Civil Rule 50(b) and Civil Rule 59(e), but the district court properly deemed the arguments waived under Civil Rule 50(b).  *See American and Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 159-60 (6th Cir.1997) ("[A] motion for directed verdict made at the close of the evidence is a prerequisite to a motion for judgment as a matter of law on the same grounds.").  Evanston did not—nor could it—argue *pre*-verdict that the punitive damages award was unsupported as a matter of law because of the jury's failure to award compensatory damages.  Accordingly, we will address the arguments under Civil Rule 59(e), and not Civil Rule 50(b).

Second, Heil contends, and the district court concluded, that Evanston's arguments are best characterized as an objection to the inconsistency of the verdict, which Evanston waived by not raising at the proper time.  Civil Rule 49(b) lists the options available to a district court when a jury returns an inconsistent verdict.  *See* Fed. R. Civ. P. 49(b)(2)-(4). In *Radvansky v. Olmstead*, 496 F.3d 609 (6th Cir. 2007), we held that a party waives its objection to an inconsistent verdict under Civil Rule 49, when it does not object before the court discharges the jury. *See Radvansky*, 496 F.3d at 618-19.

Evanston concedes that it has waived any objection under Civil Rule 49 to the inconsistency of the punitive damages award with the jury's finding of no liability.  But Evanston argues that its Civil Rule 49 waiver does not preclude it from challenging the legality of the punitive damages award on other grounds.  We agree. *See, e.g.*, *Hometown*

*Folks*, *LLC v. S&B Wilson, Inc.*, 643 F.3d 520 (6th Cir. 2011) (finding defendant's Civil Rule 49(b) objection waived, but reviewing the sufficiency of the evidence to support the verdict). Rather than recharacterize Evanston's argument as one brought under Civil Rule 49, and then dismiss it as waived, we will address it on its merits.

2.

We review the denial of a Civil Rule 59(e) motion for an abuse of discretion. *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002). A court abuses its discretion when it "relies on clearly erroneous findings of fact or when it improperly applies the law." *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 552 (6th Cir. 2012).

A district court may alter or amend a judgment under Civil Rule 59(e) to correct a clear error of law; account for newly discovered evidence or an intervening change in the controlling law; or otherwise prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.1999). Evanston argued to the district court that because punitive damages are not available on the breach of contract claim, and the jury found that Evanston was not liable for bad faith failure to settle, "there is no basis in law or fact in this case from which to award punitive damages." Mem. in Supp. of Mot. for J. at 1, R. 67. Evanston concluded that under those circumstances, allowing the award to stand would be clear error and the court should strike or set aside the award to prevent manifest injustice.

The district court found that it was not a clear error of law to enter the award because "there are legally sufficient grounds on which the jury could award punitive damages." Order at 24, R. 72. It held that punitive damages could have been awarded for breach of contract under Tennessee law, or—given the structure of the form and jury's questions during deliberation—the jury could have "believed that the punitive damages instruction subsumed the simple bad faith failure to settle claim. It is even possible, given the structure and the content of the jury instructions, that the jury collapsed punitive and compensatory damages in its $2 million punitive damages award." *Id.*

The jury's award of punitive damages absent a predicate award of compensatory damages was a clear error under Tennessee law. *See Whittington v. Grand Valley Lakes, Inc.*, 547 S.W.2d 241, 243 (Tenn. 1977) (noting "the general rule in this jurisdiction that actual or compensatory damages must be found as a predicate for the recovery of punitive damages."). And, contrary to the district court's conclusion, the breach of contract claim is not a legally sufficient alternate basis for the award. Tennessee *does* permit a plaintiff to recover punitive damages for breach of contract, when he or she shows "fraud, malice, gross negligence, or oppression." *Medley v. A.W. Chesterton Co.*, 912 S.W.2d 748, 752-53 (Tenn. Ct. App. 1995). But Tenn. Code Ann. § 56-7-105 precludes punitive damages here because it provides the exclusive extracontractual remedy for an insurer's bad faith refusal to pay on a policy. *See Mathis v. Allstate Ins. Co.*, 959 F.2d 235, 1992 U.S. App. LEXIS 7130, at *12 (6th Cir. Apr. 8, 1992) (table) ("The trial judge correctly noted that the 25 percent penalty provided for in Tenn. Code Ann. § 56-7-105(a) has been deemed the exclusive remedy for losses stemming from an insurer's bad faith refusal to pay a claim."); *see also Berry v. Home Beneficial Life Ins. Co.*, C/A No. 1150, 1988 WL 86489, at *1 (Tenn. Ct. App. Aug. 19, 1988) ("[A]s to the claim for punitive damages, T.C.A., § 56-7-105 is the exclusive remedy for bad faith refusal to pay claims arising from insurance policies."). The district court therefore abused its discretion by concluding that the punitive damages award could be attributed to Heil's breach of contract claim.

We must next address the proper remedy for the error. As the district court speculated and Heil acknowledges, the jury's award of punitive damages was apparently the result of confusion prompted by the verdict form. Specifically, at Question Six, the form asked the jury whether Evanston "did" or "did not" commit bad faith failure to settle. Verdict Form, R. 59. An italicized instruction following the question directed the jurors, "[i]f you answered 'did' to Question 6, please answer Question 7 [regarding compensatory damages]. If you answered 'did not' to Question 6, please continue to answer Question 8 [regarding punitive damages]." *Id.* The verdict form thus instructed the jury that it could award punitive damages without finding liability or awarding compensatory damages on the failure-to-settle claim. And the jury instructions did not

remedy the error.  The instructions stated that Heil "has asked that you make an award of punitive damages with respect to its bad faith failure to settle claim," but they did not explicitly restrict punitive damages to that claim. Trial Tr. at 21, R. 65.  The instructions also stated that "[y]ou may consider an award of punitive damages only if you find that the plaintiff has suffered actual damages proximately caused by the defendant's conduct and you have made an award of compensatory damages," but they did not state that the predicate award of compensatory damages must be awarded on the failure-to-settle claim. *Id.*

Evanston asks us to strike the punitive damages award and leave undisturbed the liability finding.  But it is unclear whether, had the jury been properly instructed, it would have eliminated the punitive damages award entirely, or found that Evanston "did" commit bad faith failure to settle and awarded compensatory damages on the claim.  We have no basis on which to credit the jury's liability finding instead of its finding on punitive damages, or to infer from the punitive damages award that it would have found Evanston liable and awarded compensatory damages had it been properly instructed. Under these circumstances, a new trial on liability *and* damages is warranted. *See Hopkins v. Coen*, 431 F.2d 1055, 1057 (6th Cir. 1970) ("Were this Court able to divine that one of the [inconsistent] judgments in these consolidated cases was intelligently rendered by the jury, we should remand only the ambiguous one for retrial.").  The verdicts on Heil's breach of contract and statutory claims will remain undisturbed.

## B.

Evanston next argues that the district court violated due process when it submitted the punitive damages claim to the jury because Evanston was not on notice that Heil intended to seek punitive damages.  This claim lacks merit.  Heil requested punitive damages at the outset of litigation in the complaint and amended complaint. Evanston argues that it nonetheless did not have notice because Heil did not mention punitive damages in the proposed final pretrial order or at trial.  But Heil's mere failure to reassert its claim for punitive damages in later pleadings, without more, is not decisive

enough to negate the notice provided in the complaint. Moreover, Evanston does not cite any pertinent authority for its argument that the alleged lack of notice violates due process. Evanston relies on *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and in particular, the statement that " a person [must] receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *State Farm*, 538 U.S. at 416-17 (quoting *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996)). But the quoted statement refers to a person's right to notice that punitive damages may attach to certain conduct, and to notice of the *size* of the potential award. *State Farm* did not address the issue presented here: whether it violates due process for the court to instruct the jury on punitive damages when the plaintiff did not reassert its initial request for them in later pleadings. Evanston's arguments under *State Farm* are unavailing.

Evanston separately argues that the award is unconstitutionally excessive. *See State Farm*, 538 U.S. at 418 (applying the guideposts set forth in *Gore* to assess the constitutionality of a punitive damages award). We will not address this argument because, as the district court specifically noted, Evanston did not raise it below. *See* Order at 25 ("[A]lthough Defendant cites *State Farm* . . . , it does so only on the notice issue and does not argue that the size of the punitive damages award is unreasonable as a matter of law. Therefore that issue has not been presented properly to the Court[.]"); *see also United States v. Ellison*, 462 F.3d 557, 560 (6th Cir. 2006) ("[T]his court generally will not consider an argument not raised in the district court and presented for the first time on appeal."). In any event, our decision to vacate the award and remand for new trial renders the issue moot.

C.

Finally, Evanston contends that the district court erred by not granting it judgment as a matter of law on its statutory claim for bad faith refusal to pay. We review the evidence under the applicable state law standard. *See K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir.1996). Tennessee law requires that we "take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow

all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence." *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). "Legal determinations, whether made in a diversity case or in a federal question case, [are] always . . . reviewed de novo." *K & T Enters.*, 97 F.3d at 176.

Tenn. Code Ann. § 56-7-105 imposes a penalty for an insurer's bad faith refusal to pay amounts owed under a policy "in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made." Tenn. Code Ann. § 56-7-105(a). Tennessee courts hold that to recover under the statute, an insured must establish that (1) the policy was due and payable; (2) a formal demand for payment was made; (3) the insured waited 60 days after making his demand before filing suit, unless the insurer refused to pay prior to the expiration of the 60 days; and (4) the refusal to pay was not in good faith. *Walker v. Tennessee Farmers Mut. Ins. Co.*, 568 S.W.2d 103, 106 (Tenn. Ct. App. 1977). An insured who successfully proves these elements is entitled to a statutory award not to exceed 25% of the claimed payment. Tenn. Code Ann. § 56-7-105(a). The exact amount of the award, within the 25% limit, must "be measured by the additional expense, loss, and injury including attorney fees" caused by the insurer's failure to pay. *Id.*

### 1.

Evanston contends that it is entitled to judgment as a matter of law on this claim because Heil failed to prove that it made a formal demand for payment to Evanston. At trial, Heil introduced as evidence of its demand an April 23, 2007 letter sent via Federal Express to Evanston employee Melissa Hoffman-Schartel. Trial Ex. 7, Appellee's Br., App. at 35. The letter followed two unsuccessful email requests for payment. It stated,

> Your company has an obligation to make payment. It has not. Inquiries were made to your company and they were ignored. We demand you make immediate payment  for past due invoices. The amount of $10,688.42, which represents the short paid invoices should be reimbursed to The Heil Company. The remaining unpaid invoices should be made payable directly to the Pelini & Associates law firm and should be done immediately. . . .

*Id.* The "remaining unpaid invoices" referenced totaled approximately $30,000. Trial Tr. at 90, R. 61.

Evanston raises three objections to the letter. First, Evanston argues that the letter cannot serve as evidence of a formal demand because Hoffman-Schartel testified that she never received it. But Heil introduced into evidence the Fed-Ex mailing label and receipt. Trial Ex. 7, Appellee's Br., App. at 36. The jury was entitled to credit Heil's evidence of mailing and conclude that Evanston received the letter.

Second, Evanston argues that to constitute a "formal demand" under the statute, the insured's request for payment must contain an explicit threat of litigation, which Heil's letter does not. The text of § 56-7-105(a) does not contain such a requirement. It states only that insurers are liable "when a loss occurs and they refuse to pay the loss within sixty (60) days after a *demand* has been made." Tenn. Code Ann. § 56-7-105(a) (emphasis added). Tennessee courts hold that the purpose of the "demand" requirement is to provide the insurer notice of the potential bad faith claim. *See St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, 164 S.W. 1186, 1190 (Tenn. 1913) ("The demand provided for in the statute is intended to operate as a fair warning to the insurer that the penalty will be claimed, on failure to pay within 60 days."). Merely completing the claims forms and otherwise cooperating with the claims process does not constitute a demand. *Walker v. Tennessee Farmers Mut. Ins. Co.*, 568 S.W.2d 103, 106 (Tenn. Ct. App. 1977). But an insured's repeated demands for payment—even without an explicit reference to litigation—have been held to satisfy the demand requirement. *Solomon v. Hager*, E200002586COAR3CV, 2001 WL 1657214, at *12 (Tenn. Ct. App. Dec. 27, 2001) ("[T]he plaintiff's [repeated demands for payment] gave Allstate adequate notice and time to contemplate the possibility of a bad faith lawsuit.").

Evanston relies on a federal district court decision to argue that the statute requires that the demand include an explicit threat of litigation. *See Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 590 F. Supp. 2d 970, 975 (M.D. Tenn. 2008). In *Cracker Barrel*, the district court noted the Tennessee Supreme Court's statement in *Kirkpatrick* that the statute was intended "'to supersede the necessity of suit . . . the

underlying thought being that the insurers on formal demand so made would, noting the warning, thereby be induced to pay the loss without suit . . . .'" *See id.* (quoting *Kirkpatrick*, 164 S.W. at 1190). The district court concluded, therefore, that "a formal demand entails explicit threat of bad faith litigation." *Id.* The district court dismissed *Solomon* as "an outlier." *Id.*

When construing questions of state law, "[i]f the state's highest court has not addressed the issue, [a] federal court must attempt to ascertain how that court would rule if it were faced with the issue." *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999). "When a statute is clear, [Tennessee courts] apply the plain meaning without complicating the task." *In re Estate of Tanner*, 295 S.W.3d 610, 614 (Tenn. 2009). We find § 56-7-105(a) "clear." The statute states that insurers are liable "when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made." Tenn. Code Ann. § 56-7-105(a). Black's Law Dictionary defines a "demand" as "the assertion of a legal or procedural right." *Black's Law Dictionary* 462 (8th ed. 2004). An insured can assert his or her legal right to payment—and thus comply with the plain text of the statute—without making an explicit reference to a potential lawsuit. Although *Kirkpatrick* states that the demand requirement is intended to provide the insurer notice of the threat of litigation, it does not hold that an insured's assertion of the legal right to payment is insufficient to provide that notice. Absent ambiguity in the statute itself, under Tennessee law the text's plain meaning must prevail. *Parks v. Tennessee Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998) ("[T]he Court must examine the language of a statute and, if unambiguous, apply its ordinary and plain meaning.").

Under this standard, Evanston's argument fails. Heil's April 23, 2007 letter contains an explicit "demand" for payment. *See* Trial Ex 7, Appellee's Br., App. at 35 ("We demand you make immediate payment . . . ."). The jury was entitled to find that the letter served as the demand required under the statute.

Finally, Evanston argues that Heil's demand was insufficient because Heil's April 23, 2007 letter did not request the amount Heil eventually sought at trial. But the

statute does not require that the insured's demand state with precision the amount ultimately claimed in litigation.  Evanston cites *Tyber v. Great Cent. Ins. Co.*, 572 F.2d 562, 564 (6th Cir. 1978) to argue to the contrary.  But in *Tyber*, the Court held only that the insurer did not act in bad faith when it refused to pay because the amount of loss claimed by the insured kept changing.  *Tyber*, 572 F.2d at 564 ("Unquestionably, there were reasonable bases for controversy in determining the amount of the loss.").  *Tyber* is inapposite here, where Evanston does not dispute the amount claimed by Heil and does not contest the jury's finding of bad faith.  And in any event, Heil's request was sufficiently definite to provide Evanston notice of its claim.  Evanston's April 23, 2007 letter demanded payment of the $10,618.42, plus approximately $30,000 in outstanding invoices. Heil's communications conveyed that Heil considered Evanston responsible for paying for Pelini's ongoing services, and that the costs, therefore, could be expected to continue to accrue.  Evanston has not cited any authority suggesting that the statute requires Heil to have submitted additional accountings of the claim in order to preserve its demand.

2.

Finally, Evanston contends that Heil cannot recover the statutory penalty because it failed to introduce proof that it incurred additional "expense, loss, or injury" as a result of Evanston's refusal to pay.  *See* Tenn. Code § 56-7-105.  The statute provides that an insured may recover *up to* 25% of its claimed loss.  It explicitly vests discretion in "the court or jury trying the case" to measure the amount to be awarded within the 25% limit by the evidence of additional expense, loss, or injury introduced.  *Id.*  Attorney fees are a qualifying "additional expense" under the statute. *See id.*

Heil's evidence supports the jury's award of $15,883.44 in statutory damages. At trial, Heil employee George Paturalski testified about his efforts to get Evanston to pay Pelini's fees, including "dragg[ing] them here to court." *See* Trial Tr. at 75-56, 81-90, R. 61.  Paturalski also testified that Heil may have suffered damage to its reputation and its chances on appeal due to Evanston's failure to pay Pelini. *Id.* at 96-97.  Evanston suggests that the attorney fees incurred by Heil cannot be considered an "additional"

expense because Heil would have brought suit against Evanston on its failure-to-settle claim anyway. Appellant's Br. at 46 ("[T]he thrust of Heil's suit . . . has always been Heil's bad faith failure to settle claim. There is no evidence that Heil incurred additional expenses that it would not have otherwise incurred in bringing suit against Evanston."). But there is no reason that at least a portion of Heil's expenses in bringing suit could not be attributed to the refusal-to-pay claim, even if Heil also sued on other claims. Taking the strongest legitimate view of the evidence, as we must, the jury could have reasonably concluded that the costs associated with bringing suit against Evanston to collect the fees—including attorney fees, Paturalski's time, and the harm to Heil's reputation—justified the penalty awarded.

## III.

For the foregoing reasons, we **VACATE** the jury's verdict on Heil's claim for bad faith failure to settle and the associated $2 million punitive damages award, and **REMAND** for a new trial on those issues. We **AFFIRM** the jury's finding that Evanston is liable under Tennessee Code Annotated § 56-7-105.