RECOMMENDED FOR FULL-TEXT PUBLICATION
 Pursuant to Sixth Circuit I.O.P. 32.1(b)
 File Name: 19a0056p.06

 UNITED STATES COURT OF APPEALS
 FOR THE SIXTH CIRCUIT

 TAMARIN LINDENBERG, individually and as natural ┐
 guardian of her minor children ZTL and SML, │
 Plaintiff-Appellee/Cross-Appellant, │
 │
 v. │
 > Nos. 17-6034/6079
 │
 JACKSON NATIONAL LIFE INSURANCE COMPANY, │
 Defendant-Appellant/Cross-Appellee, │
 │
 STATE OF TENNESSEE, │
 Intervenor-Appellee. │
 │
 ┘

 Appeal from the United States District Court
 for the Western District of Tennessee at Memphis.
 No. 2:13-cv-02657—Jon Phipps McCalla, District Judge.

 Decided and Filed: March 28, 2019

 Before: CLAY, STRANCH, and LARSEN, Circuit Judges.
 _________________

 COUNSEL

ON PETITIONS FOR REHEARING EN BANC: Joseph Ahillen, OFFICE OF THE
ATTORNEY GENERAL OF TENNESSEE, Nashville, Tennessee, for Intervenor Appellee.
Daniel W. Van Horn, Gadson W. Perry, BUTLER SNOW LLP, Memphis, Tennessee, for
Appellant/Cross-Appellee. ON RESPONSE IN OPPOSITION: Molly Glover, Charles S.
Higgins, BURCH, PORTER & JOHNSON, PLLC, Memphis, Tennessee, for Appellee/Cross-
Appellant. ON BRIEF: Cary Silverman, SHOOK, HARDY & BACON L.L.P., Washington,
D.C., for Amicus Curiae.

 CLAY, J. (pp. 3–5), delivered a separate opinion concurring in the denial of rehearing en
banc in which STRANCH, J., joined. BUSH, J. (pp. 6–15), delivered a separate opinion
dissenting from the denial of rehearing en banc. NALBANDIAN, J. (pp. 16–18), delivered a
separate statement regarding the denial of rehearing en banc in which THAPAR, BUSH, and
LARSEN, JJ., joined.
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 2

 _________________

 ORDER
 _________________

 The court received petitions for rehearing en banc. The original panel has reviewed the
petitions for rehearing and concludes that the issues raised in the petitions were fully considered
upon the original submission and decision. The petitions then were circulated to the full court.
Less than a majority of the judges voted in favor of rehearing en banc.

 Therefore, the petitions are denied.
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 3

 _________________

 CONCURRENCE
 _________________

 CLAY, Circuit Judge, concurring in the denial of rehearing en banc. It is incredulous that
some of my colleagues would have this Court establish rigid, mechanical, and unflinching
criteria for certification to state courts in lieu of our established practice of trusting panels to
exercise their experience, discretion, and best judgment to determine when certification is
appropriate.

 The Supreme Court has recognized that the decision of whether to certify “rests in the
sound discretion of the federal court.” Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974). This
approach recognizes that federal courts weigh numerous competing considerations when
determining whether to certify. Of course, certification “is most appropriate when the question is
new and state law is unsettled.” Transamerica Ins. Co. v. Duro Bag Mfg. Co., 50 F.3d 370, 372
(6th Cir. 1995). But federal courts may also consider factors such as comity, cooperative
federalism, and judicial economy. See Rutherford v. Columbia Gas, 575 F.3d 616, 628 (6th Cir.
2009) (Clay, J., dissenting). These multifarious considerations cannot be reduced to a checklist
or simple mathematical formula, as my colleagues would have us believe.

 Certainly, the decision concerning whether to certify is not always straightforward.
Resolving requests for certification often entails a difficult analysis of several competing
considerations. But the mere fact that ceding our discretion would be easier, and perhaps even
more expedient, is not an adequate reason for us to shirk from our judicial obligations. Rather
than adopt a rigid formula that answers the question for us of when to certify, we should trust
ourselves and our own judgment, and that of our capable colleagues on this Court, to exercise
our discretion wisely after considering the unique circumstances and considerations that may be
present in a given case.

 On the surface, my colleagues purport to take issue with this Court’s procedure for
certification. But, on a more fundamental level, they appear to challenge this Court’s very
jurisdiction to decide matters of state law in diversity cases, a power that emanates from Article
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 4

III and which Congress has codified in 28 U.S.C. § 1332. It is an “undisputed constitutional
principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the
constitutionally permissible bounds.” New Orleans Pub. Serv., Inc. v. Council of City of New
Orleans, 491 U.S. 350, 359 (1989). Federal courts have a “virtually unflagging obligation . . . to
exercise the jurisdiction given them,” Colo. River Water Conservation Dist. v. United States,
424 U.S. 800, 817 (1976), and “have no more right to decline the exercise of jurisdiction which
is given, than to usurp that which is not given,” Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404
(1821). Thus, when diversity jurisdiction is properly invoked, federal courts have a “duty . . . to
decide questions of state law whenever necessary to the rendition of a judgment.” Meredith v.
City of Winter Haven, 320 U.S. 228, 234 (1943); see Burgess v. Seligman, 107 U.S. 20, 33
(1883) (explaining that “[t]he federal courts have an independent jurisdiction in the
administration of state laws, co-ordinate with, and not subordinate to, that of the state courts”).
And “it is still the duty of the federal courts, where the state law supplies the rule of decision, to
ascertain and apply that law even though it has not been expounded by the highest court of the
State.” Fid. Union Tr. Co. v. Field, 311 U.S. 169, 177 (1940) (call number omitted).

 To the extent that my colleagues wish to circumvent Congress’s directive that we decide
state law issues in diversity cases, they ignore their constitutional obligation to exercise the
jurisdiction conferred by Congress. To the extent that they would create new rules to infringe
upon jurisdictional prerequisites for referral of cases to state courts, they engage in judicial
activism in contravention of Congress’s prerogative to define the jurisdiction of federal courts.
Even if they doubt the wisdom of the scope of federal court jurisdiction as it currently stands,
that does not justify their oblique attempt to circumscribe federal jurisdiction by impeding or
eliminating our discretion to decide when certification is appropriate.

 Moreover, my colleagues’ concerns are unfounded. When this Court sits in diversity, we
apply state law, see Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), and therefore act as “only
another court of the State.” Guar. Tr. Co. v. York, 326 U.S. 99, 108 (1945). When required to do
so, we predict state law, but we do not devise it. In many instances, federal courts are more than
capable of correctly deciding state law issues without certifying them to the state’s highest court.
In those cases, certification would serve little purpose other than to needlessly delay resolution of
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 5

the ultimate issues in the case. Some state courts frequently take an extended period of time to
decide whether to address certified questions, only to ultimately reject the certification request
and refuse to answer the questions for which we have sought guidance. I am personally aware of
multiple instances in which state courts in our circuit have sat on certification requests for up to a
year or more, only to deny the requests without taking any action. Of course, certification may
be warranted in some cases. But we should not create a mechanical rule that would require us to
certify issues in circumstances where our sound discretion and judicial experience would not
direct us to seek certification.

 Finally, in arguing for certification here, my colleagues have taken my statements from
Rutherford, 575 F.3d 616, out of context. In Rutherford, this Court faced the question of
whether the equitable doctrines of estoppel, laches, and waiver applied to an express easement
under Ohio law. Id. at 618. The majority declined to certify the question, holding that the
outcome was “largely controlled,” id., by our recent decision in Andrews v. Columbia Gas
Transmission Corp., 544 F.3d 618 (6th Cir. 2008). I dissented, arguing that stare decisis did not
preclude certification because Andrews “relied almost exclusively” on a single intermediate court
case that was likely wrongly decided, and because Andrews failed to discuss, much less
distinguish, several cases from the Ohio Supreme Court that indicated that body would likely
reach the opposite conclusion as the Andrews panel. Rutherford, 575 F.3d at 620–21. (Clay, J.,
dissenting). Rutherford is the inverse of this case. There, the panel privileged federal precedent
over state decisions. Here, the panel stands accused of doing the opposite.

 Ultimately, this panel properly considered the circumstances of the case. A jury found in
Plaintiff’s favor in December 2014. Three and a half years later, when this appeal was briefed
and argued, neither party moved for certification. The State as intervenor did so only in a
footnote, and only with regard to “the constitutional questions.” But of course, the district court
had already certified the constitutional questions to the Tennessee Supreme Court. That body,
after waiting approximately seven months, declined to answer. Under these circumstances, it
was well within our discretion to elect against a second certification attempt.

 Accordingly, I concur in the denial of rehearing en banc.
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 6

 _________________

 DISSENT
 _________________

 JOHN K. BUSH, Circuit Judge, dissenting from the denial of rehearing en banc. This
case presents an unusually strong set of reasons for certification to the Tennessee Supreme Court
of state-law questions. It also highlights the need for our circuit to clarify and define
certification standards to address the constitutional federalism considerations that underlie Erie
Railroad Co. v. Tompkins, 304 U.S. 64 (1938). I therefore respectfully dissent from the denial of
rehearing.

 To explain the reasons for my dissent, some history first is in order. The “judicial
Power” of Article III extends to, among other categories, “Controversies . . . between Citizens of
different States” and between state citizens and foreign citizens or subjects. U.S. Const. art. III,
§ 2. A common Antifederalist criticism of the United States Constitution was that it granted too
much power to federal courts at the expense of states generally and state judiciaries in
particular.1 Responding to Antifederalist criticism, Federalists defended federal-court authority
to hear such cases—what would be called diversity jurisdiction—as a way to give out-of-state or
foreign litigants a fair shake in court. Federal courts were thought to have less bias than state
courts in favor of in-state parties, and diversity jurisdiction was designed to address the
perceived unfairness of state courts.2 Diversity jurisdiction did not violate federalism principles

 1
 See, e.g., Address by a Plebian (1788), reprinted in The Essential Antifederalist 63, 71 (W.B. Allen &
Gordon Lloyd eds., 2d ed. 2002) (“The opposers to the constitution have said that it is dangerous because the
judicial power may extend to many cases which ought to be reserved to the decision of the State courts . . . .”);
George Mason, Objections (1787), reprinted in The Essential Antifederalist, supra, at 16, 17 (“The judiciary of the
United States is so constructed and extended as to absorb and destroy the judiciaries of the several states . . . .”);
Centinel Letter 1 (1787), reprinted in The Essential Antifederalist, supra, at 96, 101 (expressing concern that “it is
more than probable that the state judicatories would be wholly superseded”); Brutus, Essay XI, reprinted in The
Essential Antifederalist, supra, at 185, 188 (“The judicial power will operate to effect in the most certain, but yet
silent and imperceptible manner, what is evidently the tendency of the constitution: an entire subversion of the
legislative, executive and judicial powers of the individual states.”); Brutus, Essay XV, reprinted in The Essential
Antifederalist, supra, at 196, 199 (“Perhaps nothing could have been better conceived to facilitate the abolition of
the state governments than the constitution of the judicial.”).
 2
 See, e.g., Guar. Tr. Co. v. York, 326 U.S. 99, 111 (1945) (“The Framers of the Constitution, according to
[Chief Justice John] Marshall, entertained ‘apprehensions’ lest distant suitors be subjected to local bias in State
courts, or, at least, viewed with ‘indulgence the possible fears and apprehensions’ of such suitors.” (quoting Bank of
the U.S. v. Deveaux, 9 U.S. 61, 87 (1809))); Erie, 304 U.S. at 74 (“Diversity of citizenship jurisdiction was
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 7

because it did not deputize federal courts to apply a different law than would have applied in the
case had it been decided in state court.3

 This understanding underlay Section 34 of the Judiciary Act of 1789, enacted by the First
Congress, which provided that “the laws of the several states, except where the [C]onstitution,
treaties or statutes of the United States shall otherwise require or provide, shall be regarded as
rules of decision in trials at common law in the courts of the United States, in cases where they
apply.” Judiciary Act of 1789, ch. 20, § 34, 1 Stat. 73, 92 (emphasis added).

 In the Erie decision, the Supreme Court confirmed that “laws of the several states”
includes the decisions of the state courts as well as enacted statutes and other sources of state
law. See Erie, 304 U.S. at 78. This holding is derived from constitutional principles of
federalism. See id. at 77–78; Boyle v. United Techs. Corp., 487 U.S. 500, 517 (1988) (“Erie was
deeply rooted in notions of federalism.”). Therefore, under Erie, federal courts sitting in
diversity must make an informed assessment of what state law is by looking to state courts’
decisions as well as to state statutes and state constitutions.4

 However, a federal judge’s assessment of state law “cannot escape being a forecast rather
than a determination” if the state courts have not yet definitively resolved an issue. R.R.

conferred in order to prevent apprehended discrimination in state courts against those not citizens of the state.”);
Anthony J. Bellia Jr. & Bradford R. Clark, The Law of Nations and the United States Constitution 25–26 (2017)
(noting that “James Madison argued strongly in favor of diversity jurisdiction at the Virginia ratifying convention on
the ground that ‘foreigners cannot get justice done them in [state] courts, and this has prevented many wealthy
gentlemen from trading or residing among us’” (quoting 3 The Debates in the Several State Conventions on the
Adoption of the Federal Constitution 583 (Jonathan Elliot ed., 2d ed. 1901))).
 3
 See William A. Fletcher, The General Common Law and Section 34 of the Judiciary Act of 1789: The
Example of Marine Insurance, 97 Harv. L. Rev. 1513, 1514 (1984); see generally Bellia & Clark, supra note 2, at 28
(noting that in early cases involving general commercial law, called the “law merchant,” “both federal and state
courts deciding commercial cases ‘considered themselves to be deciding questions under a general law merchant
that was neither distinctively state nor federal’” (quoting Fletcher, supra, at 1554)).
 4
 See, e.g., Carnation Co. v. T.U. Parks Constr. Co., 816 F.2d 1099, 1100 (6th Cir. 1987) (“In Erie
Railroad, the Court held that the federal district court was required, under a proper interpretation of the Judiciary
Act of 1789 and, indeed, by the Constitution, to apply the law of the state in which it sits in resolving questions of
substantive law.”); Bradford R. Clark, Ascertaining the Laws of the Several States: Positivism and Judicial
Federalism After Erie, 145 U. Pa. L. Rev. 1459, 1551 (1997) (noting that “the principles of judicial federalism
recognized in [the Erie decision] preclude federal courts from ‘declar[ing] substantive rules of common law
applicable in a State’” and that diversity jurisdiction under Erie is not intended “to provide an alternative source of
law” (quoting Erie, 304 U.S. at 78)).
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 8

Comm’n v. Pullman Co., 312 U.S. 496, 499 (1941). A federal court might make an inaccurate
forecast and later be proved wrong if the state supreme court decides the issue the other way.

 Probably in response to the problem of inaccurate federal-court guesses, Florida in 1945
was the first state to enact a certification procedure, whereby the state high court could accept
and decide questions of state law necessary to the decision of lawsuits pending in federal courts
of appeal. See Clark, supra note 4, at 1545. The Supreme Court recognized the procedure for
the first time in Clay v. Sun Insurance Office Ltd., 363 U.S. 207, 212 (1960). Today, all of the
states except North Carolina have certification procedures.5 As certification became mainstream,
the Supreme Court repeatedly commented favorably on the procedure and sometimes instructed
lower courts to consider certification on remand. See, e.g., Arizonans for Official English v.
Arizona, 520 U.S. 43, 79 (1997); Lehman Bros. v. Schein, 416 U.S. 386, 391–92 (1974); see also
Minn. Voters All. v. Mansky, 138 S. Ct. 1876, 1893 (2018) (Sotomayor, J., dissenting).

 Because the Supreme Court has not announced concrete rules to govern lower federal
courts in deciding whether to certify questions, those lower federal courts have had to make their
own guidelines. Our circuit standards do nothing to narrow the discretion left to each district
judge and Sixth Circuit panel. See Transamerica Ins. Co. v. Duro Bag Mfg. Co., 50 F.3d 370,
372 (6th Cir. 1995) (stating only that certification may be appropriate where a question of state
law is “new” and “unsettled”). This lack of direction creates the potential for intra-circuit
conflict as to when certification is appropriate and reduces predictability. The lack of
predictability convinces me that this circuit should have more concrete standards to guide its
decisionmaking in these recurring situations; what is more, this was the ideal case in which to
begin delineating those standards. Specifically, we should seriously consider establishing a
presumption in favor of certification where, as here, the state supreme court has not settled the
issue; a prior published panel decision has addressed the issue but the current panel is inclined to
disagree with the prior decision; and neither party objects to certification.

 Sixth Circuit case law states that certification is appropriate if the question of state law is
“new” and “unsettled,” but that case law unfortunately fails to provide guidance in a recurring set

 5
 See Gregory L. Acquaviva, The Certification of Unsettled Questions of State Law to State High Courts:
The Third Circuit’s Experience, 115 Penn St. L. Rev. 377, 384–85 (2010).
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 9

of cases. Transamerica, 50 F.3d at 372. Those are the cases in which the question may not be
new in the sense that no court has addressed it, but a decision from a federal court has the
foreseeable potential to create a different state-law rule than what the state supreme court would
have produced.

 This is such a case. A previous decision of this circuit held that punitive damages were
unavailable on a claim for bad-faith breach of an insurance contract. Heil Co. v. Evanston Ins.
Co., 690 F.3d 722, 728 (6th Cir. 2012). A later Tennessee Court of Appeals decision, by
contrast, held that punitive damages were available. See Riad v. Erie Ins. Exch., 436 S.W.3d
256, 275–76 (Tenn. Ct. App. 2013). Finding that Riad had discredited Heil, the panel majority
here departed from circuit precedent. Lindenberg v. Jackson Nat’l Life Ins. Co., 912 F.3d 348,
357–59 (6th Cir. 2018). As a result, the panel majority reached a decision that is not opposed by
any controlling Tennessee authority but that nonetheless presents a significant danger of being
wrong, for reasons discussed thoroughly by the dissent. See id. at 372–76 (Larsen, J., dissenting
in part). If and when the Tennessee Supreme Court reaches the issue, it may well hold that
punitive damages are not available on a bad-faith claim. As to the state constitutional question,
there is also substantial reason to doubt that the Tennessee Supreme Court will invalidate the
punitive-damages cap under the Tennessee constitution. See id. at 379–86 (Larsen, J., dissenting
in part); see generally Br. Amici Curiae Chamber of Commerce of the United States of America,
American Tort Reform Association, National Association of Manufacturers, National Federation
of Independent Business, Small Business Legal Center, and American Property Casualty
Insurance Association. In the meantime, plaintiffs who want punitive damages but seek to avoid
the cap will be likely to file in federal district court.

 This is exactly the sort of forum-shopping that the Erie decision was meant to reduce.
See Erie, 304 U.S. at 74–75 (stating that federal courts’ application of a general common law
“made rights enjoyed under the unwritten ‘general law’ vary according to whether enforcement
was sought in the state or in the federal court” and “rendered impossible equal protection of the
law”); see also McCarthy v. Olin Corp., 119 F.3d 148, 157 (2d Cir. 1997) (Calabresi, J.,
dissenting); Todd v. Societe BIC, S.A., 9 F.3d 1216, 1222 (7th Cir. 1993) (en banc) (certifying
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 10

two questions of state tort law where “the panel’s analysis had substantial propensity to attract all
future cases of this kind into federal court”).

 Indeed, dissenting from a Second Circuit panel’s decision to decide a state tort-law issue
instead of certifying, Judge Guido Calabresi wrote:

 [F]ederal courts . . . have tended to be far too reluctant to certify questions to the
 state courts . . . . Specifically, federal courts have all too often refused to certify
 when they can rely on state lower court opinions to define state law. I view this
 reluctance as both wrong and unjust.
 Reluctance to certify is wrong because it leads to precisely the kind of
 forum shopping that Erie . . . was intended to prevent. See Hanna v. Plumer, 380
 U.S. 460, 468 . . . (1965) (noting that one of the aims of the Erie decision was
 “discouragement of forum-shopping”). This is especially so in situations where
 there is some law in the intermediate state courts, but no definitive holding by the
 state’s highest tribunal. In such cases, and in the absence of certification, the
 party that is favored by the lower court decisions will almost invariably seek
 federal jurisdiction. It will do this in order to prevent the state’s highest court
 from reaching the issue, in the expectation that the federal court—unlike the
 state’s highest court—will feel virtually bound to follow the decisions of the
 intermediate state courts . . . .
 When federal courts, in effect, prevent state courts from deciding unsettled
 issues of state law, they violate fundamental principles of federalism and comity
 . . . . Federal courts that refuse to certify end up “mak[ing] important state policy,
 in contravention of basic federalism principles.” Hakimoglu v. Trump Taj Mahal
 Assocs., 70 F.3d 291, 302 (3d Cir. 1995) (Becker, J., dissenting) . . . .
 Reluctance to certify is unjust because, as has happened with some
 frequency, the federal court, having refused to certify, may decide an issue of
 state law one way, only to discover that the state’s highest court, when presented
 with the issue in a later case, reaches the opposite result . . . .

McCarthy, 119 F.3d at 157–59 (Calabresi, J., dissenting) (emphasis added) (footnotes and some
citations omitted).

 Judge Frank Easterbrook of the Seventh Circuit sounded the same theme in his opinion
for the en banc court in a tort case that raised unsettled state-law questions:

 In a case such as [this tort case] . . . . any substantial divergence between the
 federal court’s estimate of state law and the state’s view of its own law will funnel
 all similar litigation to federal court . . . . If the federal court treats the plaintiff
 more favorably than the state tribunal would, then the plaintiff always files in
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 11

 federal court; similarly[,] any departure in the [defendant’s] favor leads the
 defendant to remove any suit filed in state court. In either case, the state loses the
 ability to develop or restate the principles that it believes should govern the
 category of cases. Certification then ensures that the law we apply is genuinely
 state law.

Todd, 9 F.3d at 1222 (citation omitted). If Calabresi and Easterbrook—two prominent federal
judges of sometimes differing perspectives—have voiced identical worries about incentivizing
forum-shopping through reluctance to certify, we in the Sixth Circuit should consider taking a
definite step toward remediating those worries.

 Despite these forum-shopping concerns, one objection to certification is that state courts,
and the Tennessee Supreme Court in particular, often decline to answer certified questions.
Although undoubtedly a true statement, that objection did not counsel against certification here
for three reasons.

 First, even if the state court declined to answer, this court would still have done the
Tennessee Supreme Court the courtesy—requested by the Tennessee attorney general—of giving
it the opportunity to speak authoritatively on its own law. See En Banc Pet. of State of Tenn. as
Intervenor-Def./Cross-Appellee at 6. If that court declined to do so, then responsibility for any
“friction-generating error” produced by a decision of this court would not lie at our door alone.
Arizonans, 520 U.S. at 79.

 Second, the Tennessee Supreme Court has made clear that it views certification as a
valuable mechanism for preserving the sovereignty of state courts:

 More importantly, the certification procedure protects states’ sovereignty.
 To the extent that a federal court applies different legal rules than the state court
 would have, the state’s sovereignty is diminished [because] the federal court has
 made state law. Such an impact on state sovereignty is no small matter, especially
 since a federal court’s error may perpetuate itself in state courts until the state’s
 highest court corrects it.

Haley v. Univ. of Tenn.-Knoxville, 188 S.W.3d 518, 521 (Tenn. 2006) (citations and internal
quotation marks omitted). Thus, the Tennessee judiciary has a favorable view of certification as
a general matter, although, of course, the Tennessee Supreme Court is under no obligation to
answer certified questions.
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 12

 Third, in this case specifically, the Tennessee Supreme Court expressly stated in its
denial of the district court’s certified constitutional questions that it was making no comment on
what it might do if the Sixth Circuit later certified the question of constitutionality and that
question had become determinative because the predicate question of punitive damages’
availability was also presented and certified. See Lindenberg, 912 F.3d at 372 (Larsen, J.,
dissenting in part). So the danger that the court would decline to answer certified questions was
no greater than usual here and quite possibly less than usual, given the importance of the state
constitutional question.

 Speaking of the constitutional question, it is unusual for the panel to have invalidated a
state statute on state constitutional grounds. This decision is in tension, in two respects, with the
approach that the Supreme Court of the United States and our court have counseled in similar
cases.

 First, the Supreme Court and our court have indicated that abstention or certification is
appropriate where a decision on state law may allow the federal court to avoid a federal
constitutional question. See, e.g., Bellotti v. Baird, 428 U.S. 132, 146–47 (1976); Planned
Parenthood Cincinnati Region v. Strickland, 531 F.3d 406, 410–11 (6th Cir. 2008). Because
federalism concerns as well as avoidance concerns appear in a case like this one, where a state
constitutional question lurks behind a predicate state-law question, certification seems doubly
wise. Indeed, the Eleventh Circuit has noted that “[c]ertification . . . is especially appropriate in
a case . . . where the decisional task involves interpreting the state constitution.” LeFrere v.
Quezada, 582 F.3d 1260, 1268 (11th Cir. 2009) (citation omitted).6 Second, and relatedly, the
Supreme Court has indicated that the possibility of making an Erie guess that results in
invalidating a state law should be avoided where certification makes avoidance possible. See
Arizonans, 520 U.S. at 79.

 6
 See also Estate of McCall ex rel. McCall v. United States, 642 F.3d 944, 946 (11th Cir. 2011) (certifying
question whether cap on noneconomic medical malpractice damages violated provisions of Florida constitution on
which there was no Florida Supreme Court guidance); Int’l Soc’y for Krishna Consciousness of Cal. Inc. v. City of
L.A., 530 F.3d 768, 773–76 (9th Cir. 2008) (certifying question whether airport was “public forum” under California
constitution); Parcell v. Governmental Ethics Comm’n, 626 F.2d 160, 161 (10th Cir. 1980) (certifying question
whether method of appointing Ethics Commission members violated “the doctrine of separation of powers as the
same is recognized as a part of the Kansas State Constitution”).
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 13

 Also important to note is that, although neither Ms. Lindenberg nor Jackson National
moved our court to certify the particular questions at issue here, our court can and does certify
questions sua sponte. See, e.g., Am. Booksellers Found. for Free Expression v. Strickland,
560 F.3d 443, 444 (6th Cir. 2009) (order). This would not be quite a sua sponte certification,
anyway: Ms. Lindenberg already moved for certification of the state constitutional question in
the district court, at which point the Tennessee attorney general intervened in the action. See
Lindenberg, 912 F.3d at 355. The district court did certify the constitutional question (and one
other constitutional question, not at issue here), but the Tennessee Supreme Court declined to
answer it because it would not have been determinative of the litigation. Id.; see id. at 371–72
(Larsen, J., dissenting in part). On appeal, the Tennessee attorney general asked our court to
certify the state constitutional questions in the event we found punitive damages were available.
Br. of State of Tenn. as Intervenor-Def./Cross-Appellee at 9 n.2. Then, when asked at oral
argument before our court if they had any objection to certification of the now determinative
questions regarding the availability of punitive damages and the constitutionality of the punitive-
damages cap, both sides agreed that certification would be appropriate.

 Thus, all factors seem to point toward certification here. But because our circuit has no
guidelines for certification beyond suggesting that it is appropriate for novel and unsettled
questions of state law, the panel could disregard the availability of the certification procedure.

 To clarify our standards is the primary reason we should have granted rehearing in this
case. The case is appropriate for en banc reconsideration in other ways as well, however. The
Federal Rules of Appellate Procedure state that one ground for en banc rehearing is a split in
circuit precedent. See Fed. R. App. P. 35(a)(1). We have that here. Furthermore, our circuit
rules state that a panel decision may not be overruled except by the en banc court.7 6th Cir. R.
32.1(b). The panel decision here not only departs from precedent but also creates a major risk of

 7
 The Lindenberg majority noted that “a single decision of a state court of appeals may abrogate this Court’s
interpretation of state law, at least in circumstances where (1) state law treats an appellate court decision as
controlling in the absence of a ruling from the state supreme court; (2) there is no indication from the state supreme
court that it would reach a different outcome; and (3) the state appellate court’s decision is irreconcilable with our
own ruling.” 912 F.3d at 357 (citations omitted). However, here, as the dissent persuasively argued, there is reason
to believe the Tennessee Supreme Court would reach a different outcome. See id. at 370, 373, 375 (Larsen, J.,
dissenting in part).
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 14

horizontal forum-shopping, in contravention of fundamental federalism principles. Thus, it
involves an issue of great importance. See Fed. R. App. P. 35(a)(2) (providing for en banc
rehearing in cases of “exceptional importance”).

 In addition, to the extent our internal operating procedures counsel against rehearing
solely state-law issues, see 6th Cir. I.O.P. 35(a), we would not be reconsidering such issues en
banc here. As for the state-law issues, we would not be deciding them: we would simply be
asking the state court to do that. And this would not be the first time that we have, while sitting
en banc, certified issues to a state supreme court. See Duffy v. Foltz, 804 F.2d 50, 53–54 (6th
Cir. 1986) (applying state court’s answer to certified question after en banc court certified the
question); cf. Todd, 9 F.3d at 1222 (Seventh Circuit certifying two questions of state tort law,
which had become relevant as a result of the en banc court’s vacating the panel decision, and
observing that “[l]ittle would be served by substituting the guess of eleven judges for that of
three; far better to pose the questions to the only judges who can give definitive answers”). But,
in any event, if we had reheard this case en banc, we could have considered a very important
federal question: what certification standard should apply in our circuit to implement the
constitutional federalism principles articulated by Erie and its progeny.

 In other words, we should have used this case to articulate more meaningful standards to
guide certification decisions. At the very least, there should be a presumption in favor of
certification where, as here, a state supreme court has not decided an issue; neither party objects
to certification; and a prior precedential panel decision of this court stands between the current
panel and the decision it wishes to reach on state law. See Clark, supra note 4, at 1553–54
(arguing for “a presumption in favor of certification in cases presenting” unsettled questions of
state law whose “resolution entail[s] the exercise of significant policymaking discretion”); cf.
McCarthy, 119 F.3d at 161 (Calabresi, J., dissenting) (stating that certification is “appropriate” in
“virtually any case in which 1) a significant and dispositive issue of state law is in genuine doubt
. . . and 2) certification is specifically requested by the party that did not invoke federal court
jurisdiction”). There should likewise be a presumption in favor of certification where the panel
is facing an unclear issue of state constitutional law. See LeFrere, 582 F.3d at 1268.
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 15

 Such a presumption would not upend the way we currently decide cases in the Sixth
Circuit. I am not advocating for certifying questions in a vast set of new situations or for
requiring every panel to certify if a certain group of boxes is checked. However, I do think we
should make it easier for litigants to predict when this court will certify questions and easier for
the en banc court to determine whether a panel has made a grave error in deciding a question of
unsettled state law itself instead of certifying.

 In sum, we have missed an opportunity to address a significant issue that is likely to
recur. Assuming the Supreme Court provides no further guidance (but perhaps it will, which I
would welcome), the burden falls on each circuit to define standards for certifying questions, and
at some point we should examine our standards more carefully. Otherwise, we risk validating
the prediction of the Antifederalists: that an encroaching federal judiciary would use federal
judicial power to diminish the power of state judiciaries. To minimize the risk of unnecessary
interference with the autonomy and independence of the states, we should more frequently
accept state courts’ open invitations to pose to them certified questions regarding their own law.
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 16

 _________________

 STATEMENT
 _________________

 NALBANDIAN, Circuit Judge. Today’s decision marks a missed opportunity for our
court to more firmly establish its commitment to a “cooperative judicial federalism.” Arizonans
for Official English v. Arizona, 520 U.S. 43, 77 (1997). I would have granted rehearing en banc
to certify the state-law questions to the Tennessee Supreme Court, rather than risk the kind of
“friction-generating error” that arises when federal courts invalidate state statutes. Id. at 79. But
the panel’s decision not to certify the questions is not the last word on the matter. Nothing
prevents future courts—whether another panel from this circuit or one of our district court
colleagues—from certifying the same questions to the Tennessee Supreme Court should they
arise again.

 At first blush, it may seem inconsistent with stare decisis for a district court or a later
panel of this court to certify a question after one panel has already made an Erie prediction about
state law. But we have endorsed using the certification process to clarify state law in this exact
situation. See Geib v. Amoco Oil Co., 29 F.3d 1050, 1060–61 (6th Cir. 1994). Rather than allow
federal courts to “authoritatively determin[e] unresolved state law,” the better practice is to send
those questions to the state judiciary for resolution. Id. at 1061 (quoting Clay v. Sun Ins. Office
Ltd., 363 U.S. 207, 212 (1960)). The state court, of course, can turn us down. See, e.g., Geib v.
Amoco Oil Co., 163 F.3d 329, 330 (6th Cir. 1995). And in that case we must keep following the
dictates of stare decisis. Id. But until the state judiciary speaks on an unsettled issue of state law,
no amount of decisions from this court prevents the next court from certifying the question.

 Years after Geib, another panel in our circuit faced this same dilemma. The majority
opted not to exercise its discretion to certify because, among other reasons, “it would arguably be
inconsistent with” the court’s precedent. Rutherford v. Columbia Gas, 575 F.3d 616, 619 (6th
Cir. 2009). But in a thoughtful dissent, Judge Clay cast serious doubt on that proposition.
“[C]ertifying a question to a state court does not implicate, much less contradict, our obligations
under stare decisis.” Id. at 623 (Clay, J., dissenting). That’s because asking the state court to
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 17

weigh in does not modify or overturn prior precedent. Id. It’s an exercise of deference to the
judicial body that actually holds the power to resolve unsettled questions of state law.

 And, more importantly, the majority’s decision in Rutherford was not inconsistent with
what we said in Geib. The majority in Rutherford only exercised its discretion not to certify that
particular question, did not cite the prior panel decision in Geib, and did not discuss the question
of whether certification would have been inconsistent with stare decisis.

 To be sure, not every circuit agrees. The Fifth Circuit, for example, adopts a more
restrictive view of stare decisis. Courts there must continue applying suspect precedent rather
than certify the issue to the state court. See Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 425 (5th
Cir. 2001); Lee v. Frozen Food Express, Inc., 592 F.2d 271, 272 (5th Cir. 1979). But the Fifth
Circuit also permits rehearing en banc to correct panel decisions that misapply state law. See
I.O.P. following 5th Cir. R. 35; see also Sturgeon v. Strachan Shipping Co., 731 F.2d 255, 256
(5th Cir. 1984); Hudson v. R. J. Reynolds Tobacco Co., 427 F.2d 541, 542 (5th Cir. 1970)
(“We are bound by the [precedent] on this issue . . . until, if ever, the Court en banc redecides the
question or the Louisiana courts hold differently.”). We, on the other hand, have no such luxury.
Our internal rules preclude rehearing en banc for alleged errors of state law. See 6 Cir. I.O.P.
35(a). Adopting the Fifth Circuit rule while maintaining our own rules for rehearing en banc
would turn a randomly selected, three-judge panel into the court of last resort for many state-law
issues. See Geib, 29 F.3d at 1060 (explaining the “very real danger that Michigan’s courts will
be denied any meaningful participation in the interpretation of” their own law for issues that
almost always involve diverse parties). But we have avoided that predicament by establishing a
narrower view of stare decisis.

 Federal courts have a duty to properly decide questions of state law. It’s a duty “from
which we may not shrink.” Rutherford, 575 F.3d at 624 (Clay, J., dissenting). Certification is
one tool to assist us in this endeavor. See Lehman Bros. v. Schein, 416 U.S. 386, 390–91 (1974).
And it makes no difference whether one panel has already spoken on the issue. See Geib, 29 F.3d
at 1060–61. See also Eads v. Morgan, 298 F. Supp. 2d 698, 707 (N.D. Ohio 2003). We are,
after all, merely predictors of state law. See Stryker Corp. v. XL Ins. Am., 735 F.3d 349, 358 (6th
Cir. 2012). We speculate about how the state judiciary might answer these unsettled questions.
 Nos. 17-6034/6079 Lindenberg v. Jackson Nat’l Life Ins. Co., et al. Page 18

But stare decisis does not turn unsettled questions of state law into settled ones. And federal
courts must always be free to seek answers from the only judicial body capable of providing
them.

 ENTERED BY ORDER OF THE COURT

 ____________________________________
 Deborah S. Hunt, Clerk